**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

DORIS SUE ALLEN, DONNA S. LUCAS,
DANA KELLEN, HEDY L. ANSELMAN,
TIMOTHY R. GARRETT, JONATHAN G.
AXELROD, JOHN A. BOARDMAN, WARREN
J. PEPICELLI, and all others similarly situated,

Plaintiffs,

      v.

BANK OF AMERICA CORPORATION; BANK
OF AMERICA, N.A.; MERRILL LYNCH,
PIERCE, FENNER & SMITH INC.; BARCLAYS
PLC; BARCLAYS BANK PLC; BARCLAYS
CAPITAL INC.; BNP PARIBAS GROUP; BNP
PARIBAS NORTH AMERICA, INC.;
CITIBANK, N.A.; CITIGROUP, INC.; CREDIT
SUISSE GROUP AG; CREDIT SUISSE
SECURITIES (EUROPE) LIMITED; CREDIT
SUISSE SECURITIES (USA) LLC; DEUTSCHE
BANK AG; THE GOLDMAN SACHS GROUP,
INC.; GOLDMAN, SACHS & CO.; HSBC
HOLDINGS PLC; HSBC BANK PLC; HSBC
NORTH AMERICA HOLDINGS, INC.; HSBC
BANK USA, N.A.; JPMORGAN CHASE BANK,
N.A.; JPMORGAN CHASE & CO; MORGAN
STANLEY; MORGAN STANLEY CAPITAL
SERVICES LLC ; MORGAN STANLEY & CO.,
LLC; THE ROYAL BANK OF SCOTLAND
GROUP PLC; THE ROYAL BANK OF
SCOTLAND PLC; RBS SECURITIES, INC.;
UBS AG; UBS SECURITIES, LLC; UBS
INVESTMENT BANK; UBS INVESTMENT
BANK, AMERICAS and DOES 1- 40,

Defendants.

No. 1:15-cv-04285-LGS

**SETTLING DEFENDANTS' OPPOSITION TO THE *ALLEN* PLAINTIFFS'
MOTION TO AMEND**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ............................................................................................... iii

PRELIMINARY STATEMENT ........................................................................................ 1

ARGUMENT ................................................................................................................... 3

    I.  The Order Bars Prosecution Of The *Allen* Action ................................................ 3

        a.  The Amended Complaint asserts Released Claims. ....................................... 3

        b.  The *Allen* Plaintiffs' "last look" allegations do not enable them to circumvent the Order. ........................................................................................ 8

    II.  For Prudential Reasons, The Court May Defer Final Consideration Of The Preclusive Effect Of The Settlements .................................................................... 10

CONCLUSION ............................................................................................................... 12

EXHIBIT A:  Illustrative Allegations of Collusion in Amended Complaint .............................. 16

EXHIBIT B:  Illustrative Allegations of Collusion in the PSAC ............................................. 18

## **TABLE OF AUTHORITIES**

**Page(s)**

#### **Rules and Statutes**

ERISA §§ 403(a), 502(a)(3) ................................................................................ 7

#### **Cases**

*Agway, Inc. Emps. 401(k) Thrift Inv. Plan v. Magnuson,*
409 F. Supp. 2d 136 (N.D.N.Y. 2005) ............................................................. 7

*Am. Soc'y for the Prevention of Cruelty to Animals v. Ringling Bros.,*
244 F.R.D. 49 (D.D.C. 2007) ........................................................................... 9

*Axiom Inv. Advisors, LLC v. Barclays Bank PLC,*
No. 1:15-cv-09323-LGS (S.D.N.Y. Dec. 15, 2015) ........................................ 8

*Brown v. Wells Fargo Bank,*
25 F. Supp. 3d 144 (D.D.C. 2014) ................................................................... 8

*Cicatello v. Brewery Workers Pension Fund,*
434 F. Supp. 950 (W.D.N.Y. 1977) ................................................................. 7

*Djourabchi v. Self,*
240 F.R.D. 5 (D.D.C. 2006) ............................................................................. 9

*In re Baldwin-United Corp.,*
770 F.2d 328 (2d Cir. 1985) ............................................................................. 7

*In re Currency Conversion Fee Antitrust Litig.,*
264 F.R.D. 100 (S.D.N.Y. 2010) ..................................................................... 5

*In re Foreign Exch. Benchmark Rates Antitrust Litig.,*
No. 13-cv-7789 (S.D.N.Y.) ............................................................................. 1

*In re NASDAQ Mkt.-Makers Antitrust Litig.,*
187 F.R.D. 465 (S.D.N.Y. 1998) ..................................................................... 10

*In re PaineWebber Ltd. P'ships Litig.,*
147 F.3d 132 (2d Cir. 1998) ............................................................................. 11

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
986 F. Supp. 2d 207 (E.D.N.Y. 2013) ................................................................ 7

*In re WorldCom, Inc. Sec. Litig.*,
No. 02 Civ. 3288 (DLC), 2004 WL 2591402 (S.D.N.Y. Nov. 12, 2004), *order enforced*,
*In re Worldcom, Inc. Sec. Litig.*, No. 02 Civ. 3288 (DLC), 2005 WL 820266 (S.D.N.Y.
Apr. 8, 2005) ...................................................................................................... 7

*Murphy v. Int'l Bus. Mach. Corp.*,
No. 10 Civ. 6055 (LAP), 2012 WL 566091 (S.D.N.Y. Feb. 21, 2012) ............................ 6

*Robertson v. Nat'l Basketball Ass'n*,
622 F.2d 34 (2d Cir. 1980) .................................................................................. 11

*Stiller v. Colangelo*,
221 F.R.D. 316 (D. Conn. 2004) ........................................................................... 9

*TBK Partners, Ltd. v. W. Union Corp.*,
675 F.2d 456 (2d Cir. 1982) ................................................................................ 11

*Twombly v. Bell Atl. Corp.*,
425 F.3d 99 (2d Cir. 2005), *rev'd on other grounds*, 550 U.S. 544 (2007) ...................... 8

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
396 F.3d 96 (2d Cir. 2005) ............................................................................. 5, 11

*Williams v. GE Capital Auto Lease, Inc.*,
159 F.3d 266 (7th Cir. 1998) ............................................................................... 8

## **Other Authorities**

7AA Charles Alan Wright & Arthur D. Miller, Federal Practice & Procedure § 1789 (3d
ed. 1998) ......................................................................................................... 11

The undersigned defendants ("Settling Defendants")[1] respectfully submit this memorandum in opposition to the *Allen* Plaintiffs'[2] motion to further amend their already once amended complaint (the "Amended Complaint").

## PRELIMINARY STATEMENT

This is not, as the *Allen* Plaintiffs suggest, a run-of-the-mill motion to amend a complaint. Here, the proposed amendment must be viewed in the context of pending settlements in *In re Foreign Exchange Benchmark Rates Antitrust Litigation*, No. 13-cv-7789 (S.D.N.Y.) (the "Consolidated Action"), where releases cover the *Allen* Plaintiffs' claims and class members include the entities the *Allen* Plaintiffs purport to represent. The Court's Preliminary Approval Order in the Consolidated Action (ECF No. 536, the "Order") expressly enjoins the prosecution of claims covered by the settlements. The *Allen* Plaintiffs are attempting to prosecute their claims against the Settling Defendants and intend to seek burdensome discovery.[3] For the reasons discussed below, under the Order, the *Allen* Plaintiffs' motion should be denied, or at least deferred until the final approval hearing, and further prosecution of the *Allen* Action against Settling Defendants should cease.

*First*, it is clear that the *Allen* Plaintiffs' claims fall within the scope of the settlement releases and that the prosecution of these claims would violate the Order in the Consolidated

---

[1] Settling Defendants are Barclays Bank PLC and Barclays Capital Inc.; Bank of America Corporation, Bank of America, N.A., and Merrill Lynch, Pierce, Fenner & Smith Inc.; BNP Paribas Group, BNP Paribas North America Inc., BNP Paribas Securities Corp., and BNP Prime Brokerage, Inc.; Citigroup Inc., Citibank, N.A., Citicorp, and Citigroup Global Markets Inc.; The Goldman Sachs Group, Inc. and Goldman, Sachs & Co.; HSBC Holdings PLC, HSBC Bank PLC, HSBC North America Holdings Inc., HSBC Bank USA, N.A.; JPMorgan Chase & Co. and JPMorgan Chase Bank, N.A.; The Royal Bank of Scotland Group PLC, The Royal Bank of Scotland PLC, and RBS Securities, Inc.; and UBS AG, UBS Group AG, and UBS Securities LLC.

[2] As used herein, the "*Allen* Plaintiffs" refer to Plaintiffs Doris Sue Allen, Donna S. Lucas, Dana Kellen, Hedy L. Anselman, Timothy R. Garret, Jonathan G. Axelrod, John A Boardman, and Warren J. Pepicelli in the above-captioned action (the "*Allen* Action").

[3] The *Allen* Plaintiffs objected to preliminary approval of the settlements, arguing both that their claims were outside the scope of the settlement releases and, at the same time, that they fell within the releases, but were inadequately compensated.

Action.  The *Allen* Plaintiffs cannot evade the Order—and compel the Settling Defendants to continue defending released claims—by tacking on so-called "last look" allegations as to one defendant's electronic trading platform as a subpart of one such released claim.[4]  The proposed amendment amounts to a further prosecution of released claims, which is barred by the Order.

*Second*, we respectfully submit that although the breadth of the settlement releases—and their coverage of the PSAC—is clear, that issue need not be finally determined at this stage in order to resolve this motion.  It is enough for now that the releases indisputably encompass the core factual allegations and claims in the PSAC.  The PSAC remains centrally premised on allegations of concerted conduct and alleged fraud and manipulation in transactions in FX products, all of which are plainly covered by the releases.  The specifics of whether one or more of the *Allen* Plaintiffs' sparse additional allegations could survive dismissal upon final approval of the settlements is an issue that need not be decided now.  However that issue were decided upon final approval, it would not justify allowing the *Allen* Plaintiffs to proceed at this time to prosecute the PSAC against the Settling Defendants.  The Court's Preliminary Approval Order prohibits such disruptive tactics pending final approval of the settlements.  Final determinations concerning the preclusive effect of the settlements generally should be made at the final fairness hearing with the benefit of a full record and briefing.  In the meantime, the Settling Defendants should not be deprived of the benefit of their bargain and the settlement process should not be disrupted by requiring litigation of released claims brought on behalf of proposed class members (including whether they are released) during the settlement approval process.  To allow the *Allen* Plaintiffs to proceed with their action in the meantime would be disruptive and contrary to the orderly progression of the settlement approval process.

---

[4] As noted below, the proposed "last look" allegations are referenced in only one sub-paragraph (out of five) of one claim (out of nine) against a sub-group of Settling Defendants, only one of which (Barclays) is even mentioned in the allegations themselves.  (*See* Proposed Second Am. Compl. ("PSAC") ¶ 329(d)(iv).)

For all of these reasons, this Court should deny the motion for leave to amend and stay any further prosecution of this case against the Settling Defendants pending final approval of the settlements in the Consolidated Action.

## ARGUMENT

### I.   The Order Bars Prosecution Of The *Allen* Action

If the settlement releases' coverage is to be determined at this stage, it is clear that the *Allen* Plaintiffs' claims are covered by the settlement releases, and the further prosecution of this case against the Settling Defendants, including the proposed amendment, is accordingly prohibited by the Order.

#### a.   The Amended Complaint asserts Released Claims.

This case falls squarely within the terms of the Order, which enjoins prosecution of "Released Claims" on behalf of "Class Members" against "Released Parties."

Under the settlement agreements, Released Claims include any claims "known or unknown, suspected or unsuspected, asserted or unasserted, arising from or relating in any way to any conduct alleged or that could have been alleged in and arising from the factual predicate of the [Consolidated] Action, or any amended complaint or pleading therein, from the beginning of time until the Effective Date."[5]  Among the specifically enumerated categories of Released Claims are those based on "the establishment, calculation, communication, manipulation, or use of the price, spread, or rate of any FX Instrument or FX Exchange-Based Instrument."[6]

Under the agreements, Releasing Parties include "each Class Member, on behalf of themselves and any of their respective past, present or future officers, directors, stockholders,

---

[5] (Declaration of Christopher M. Burke and Michael D. Hausfeld In Support Of Class Plaintiffs' Motion For Preliminary Approval Of Settlement Agreements With Bank Of America, Barclays, BNP Paribas, Citigroup, Goldman Sachs, HSBC, JPMorgan, RBS, And UBS (the "Burke Decl.") Exs. 1-9.)

[6] *Id.*

agents, employees, *legal or other representatives*, partners, associates, *trustees*, parents, subsidiaries, divisions, affiliates, heirs, executors, administrators, purchasers, predecessors, successors, and assigns . . . ."[7]  The Settling Defendants are among the Released Parties.[8]

The Order, which preliminarily approves the settlements in the Consolidated Action, in turn mandates that "[p]ending final determination of whether the settlements set forth in the Settlement Agreements should be approved, each Class Plaintiff and *each Class Member, either directly, representatively, or in any other capacity, shall be enjoined from prosecuting in any forum any Released Claim against any of the Released Parties, and shall not sue any of the Released Parties on the basis of any Released Claims* or assist any third party in commencing or maintaining any suit against any Released Party related in any way to any Released Claims." (Consol. Action, ECF No. 536 (emphasis added).)

Yet suing the Released Parties on the basis of Released Claims—in contravention of the Court-ordered injunction—is precisely what the *Allen* Plaintiffs are attempting to do.

*First*, the *Allen* Plaintiffs purport to bring claims on behalf of ERISA plans that are, without question, members of the classes settling the Consolidated Action, because they are "[p]erson[s] who . . . entered into an FX Instrument directly with a . . . Released Party." (*E.g.*, Burke Decl. Exs. 1-9; *see also Allen* Am. Compl. ¶¶ 1, 221; PSAC ¶¶ 1, 276.)

*Second*, as demonstrated in the context of the *Allen* Plaintiffs' objections to preliminary approval, they purport to bring claims on behalf of ERISA plans primarily concerning alleged anti-competitive conduct in the FX markets, and, in all events, concerning "the establishment,

---

[7] *Id.* (emphasis added).

[8] *Id.*  "Released Parties" include, in addition to each Settling Defendant, "each of their past, present, and future, direct and indirect parents (including holding companies), subsidiaries, affiliates, associates (all as defined in SEC Rule 12b-2 promulgated pursuant to the Securities Exchange Act of 1934), divisions, predecessors, successors, and each of their respective officers, directors, employees, agents, attorneys, legal or other representatives, trustees, heirs, executors, administrators, advisors, and assigns."  (*See* Order at 3; *see also* Burke Decl. Exs. 1-9.)

calculation, communication, manipulation, or use of the price, spread, or rate of any FX Instrument or FX Exchange-Based Instrument." (*E.g.*, Burke Decl. Exs. 1-9.)  Such claims are plainly covered by the settlement releases, as they are based on the same underlying factual predicate as the claims in the Consolidated Action:  the alleged manipulation of the price of foreign currency exchange transactions.  Indeed, the vast majority of the allegations in the Amended Complaint (and the PSAC, as discussed further below)—including excerpts from chat room transcripts—merely duplicate (often verbatim) the allegations in the Consolidated Action, charging Defendants with manipulating FX benchmark rates and prices by, for instance, sharing confidential customer order information and coordinating to "front run" and "bang the close." (*Compare* Chart containing Illustrative Allegations of Collusion in the Amended Complaint, annexed hereto as Exhibit A with Chart containing Illustrative Allegations of Collusion in the PSAC, annexed hereto as Exhibit B.)

The *Allen* Plaintiffs cannot dodge the Court's injunction, or the plain language of the settlement releases, by arguing that they bring claims under ERISA, rather than the antitrust claims asserted in the Consolidated Action.  The Second Circuit has held that a class action settlement may release claims not specifically pleaded, so long as the released conduct arises out of the same "factual predicate" as the settled conduct.  *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 107 (2d Cir. 2005).  The *Allen* Plaintiffs agree, as they must, acknowledging that "[a] class action settlement may release future claims based on a different legal theory."[9]  This rule "serves the important policy interest of judicial economy by permitting parties to enter into comprehensive settlements that prevent relitigation of settled questions at the core of a class action."  *In re Currency Conversion Fee Antitrust Litig.*, 264 F.R.D. 100, 119 (S.D.N.Y. 2010)

---

[9] *Allen* Plaintiffs' Response to Motion for Preliminary Approval of Settlement Agreements (the "*Allen* Response"), Consol. Action, ECF No. 496 (emphasis omitted).

(citation omitted).

Likewise, the *Allen* Plaintiffs cannot plausibly escape the injunction, or releases, by again contending that the claims in the *Allen* Action and in the Consolidated Action arise from different "factual predicates."  (*Allen* Resp. at 1.)  Even a cursory review of the allegations in the *Allen* Action exposes their fundamental identity with the Consolidated Action:  both assert that Defendants manipulated rates or prices in the FX markets in order to enrich themselves at the expense of the plaintiffs.[10]  (*See Allen* Am. Compl. ¶¶ 8-10; PSAC ¶¶ 8-10; Consol. Action Am. Compl. (hereinafter "CAC2") ¶ 1.)[11]  Additionally, absent the alleged predicate collusion and manipulation, there would be no opportunity or occasion for the alleged class-wide unlawful "markups" and other alleged conduct that supposedly violated ERISA.  (*Allen* Am. Compl. ¶ 240; PSAC ¶ 296.)

Because the ERISA plans on whose behalf the *Allen* claims are being brought transacted directly with an FX dealer (or on an FX exchange), they, acting through their fiduciaries, are members of the Settlement Classes in the Consolidated Action.  Importantly, once any ERISA plans have entered into the settlement, individuals may not separately bring a claim on behalf of the same plans.  The *Allen* Plaintiffs do not dispute—nor could they—that their ERISA claims would be precluded by an earlier settlement that releases claims brought under an ERISA theory. *See Murphy v. Int'l Bus. Mach. Corp.*, No. 10 Civ. 6055 (LAP), 2012 WL 566091 (S.D.N.Y. Feb. 21, 2012) (finding that subsequent ERISA claims were precluded by an earlier ERISA settlement and emphasizing that the same plan and the same underlying conduct had been fully litigated and

---

[10] Notably,  the *Allen* Plaintiffs repeatedly have requested "discovery" from the Settling Defendants coextensive with the cooperation materials sought by Lead Plaintiffs in the Consolidated Action.  They have thus effectively conceded that their ERISA-based claims are premised on the same facts as those at issue in the Consolidated Action.  There can be no other reason for the discovery they seek.

[11] *See also* Settling Defs.' Resp. to *Allen* Pls.' Resp. to Prelim. Approval of Settlement Agreements, Consol. Action, ECF No. 511.

settled); *see also In re WorldCom, Inc. Sec. Litig.*, No. 02 Civ. 3288 (DLC), 2004 WL 2591402, at *13 (S.D.N.Y. Nov. 12, 2004) (stating that it would be "patently unfair" to permit plaintiff and putative class to receive double recovery for the same losses arising from the same underlying conduct), *order enforced*, *In re Worldcom, Inc. Sec. Litig.*, No. 02 Civ. 3288 (DLC), 2005 WL 820266 (S.D.N.Y. Apr. 8, 2005); *Agway, Inc. Emps. 401(k) Thrift Inv. Plan v. Magnuson*, 409 F. Supp. 2d 136, 145 (N.D.N.Y. 2005) (plan participants qualify as "a party in privity with plaintiffs in this case" and a subsequent action by the participants against the same defendant previously sued by the plan would be precluded); *Cicatello v. Brewery Workers Pension Fund*, 434 F. Supp. 950, 956 (W.D.N.Y. 1977) (where a trustee of an ERISA plan defended a state court suit seeking specific performance of a merger agreement, "privity exists between the trustee and the trust beneficiaries, and the state court decision is thus binding on them by virtue of the doctrine of res judicata").

Moreover, any ERISA plans that are members of the class in the Consolidated Action (including the United Food and Commercial Workers Plan, which is one of the named plaintiffs in the Consolidated Action) have standing to release ERISA claims brought on their behalf.[12] That is true whether or not the plans could bring identical claims in their own name.  *See, e.g.*, *In re Baldwin-United Corp.*, 770 F.2d 328, 336 (2d Cir. 1985) (where, "as a condition of the settlement, the plaintiffs agreed to release all claims," a State cannot bring "claims derivative of the plaintiffs' rights"—even if the State "represented itself to be acting as a 'sovereign'"); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 986 F. Supp. 2d 207, 237-38 (E.D.N.Y. 2013) (holding that a settling class member may release claims that a State could

---

[12] An ERISA plan such as the United Plan acts through and at the direction of its fiduciaries.  *See* ERISA § 403(a).  The same fiduciaries that caused the United Plan to become a named plaintiff in the Consolidated Action have standing to bring claims on behalf of that plan under ERISA.  ERISA § 502(a)(3).  *See, e.g.*, *Agway*, 409 F. Supp. 2d 136 (retirement plan brought claims against plan fiduciaries for breach of ERISA).

subsequently assert in a "representative" *parens patriae* capacity on behalf of the class member's interests).[13]

For all the reasons stated above, the *Allen* Plaintiffs' claims against the Settling Defendants are Released Claims on behalf of "Class Members" against "Released Parties." Accordingly, the prosecution of these claims would violate the Court's Order, and the *Allen* Plaintiffs' motion to amend should be denied.

### b. The *Allen* Plaintiffs' "last look" allegations do not enable them to circumvent the Order.

The *Allen* Plaintiffs have suggested that the proposed amendment is not precluded by the Order because it includes "last look" allegations that are carved out of the definition of Released Claims. That argument is unavailing.

The *Allen* Plaintiffs are not asserting a "'last look' claim" within the meaning of the settlement agreements. While they propose to add several paragraphs of *allegations* regarding Barclays's electronic trading platform and related regulatory investigations, they do not assert an independent *claim* for relief based on these allegations and they make no allegations *at all* as to other Settling Defendants' conduct.[14] Instead, the *Allen* Plaintiffs propose to add a reference to "last look" allegations in a single *subparagraph* within a *single* pre-existing Released Claim

---

[13] *See also Williams v. GE Capital Auto Lease, Inc.*, 159 F.3d 266 (7th Cir. 1998) (holding that a class settlement release can bar a subsequent action based on the same facts even though the released claims were not ripe at the time of the class settlement); *Brown v. Wells Fargo Bank*, 25 F. Supp. 3d 144 (D.D.C. 2014) (holding that a class settlement release can bar a subsequent action even though the named plaintiffs in the first action lacked standing to assert the released consumer protection claims).

[14] The proposed additional allegations relating to "last look" implicate a single defendant—Barclays. (*See* PSAC ¶¶ 27-28, 167-83, 199, 204, 208-12, 273.) Barclays has separately reached a settlement in principle on these claims in *Axiom Investment Advisors, LLC v. Barclays Bank PLC*, No. 1:15-cv-09323-LGS (S.D.N.Y. Dec. 15, 2015). *See Axiom*, ECF No. 22. At most, the *Allen* Plaintiffs simply speculate that "likely other banks" were also involved in "last look," and appear to rely (improperly) on press reports to insinuate that e-trading related investigations at other banks somehow amount to actual wrongdoing sufficient to state a claim. (*See, e.g.*, PSAC ¶¶ 170-71, 212.) *See also, e.g., Twombly v. Bell Atl. Corp.*, 425 F.3d 99, 118 n.14 (2d Cir. 2005) (request for investigation by the House of Representatives was "irrelevant at the pleading stage," because "[a]n allegation that someone has made a similar allegation does not, without more, add anything to the complaint's allegations of fact"), *rev'd on other grounds*, 550 U.S. 544 (2007).

against a *subset* of Settling Defendants (Count VI – one of nine Counts, in a 200-page complaint with over 350 paragraphs)[15], which also rests on the conduct set forth in the remainder of the Amended Complaint.  Inserting such a reference within a Released Claim is not sufficient to obviate the significant protections of the Order that were an essential part of the settlement bargain (*i.e.*, avoidance of litigation costs and burdens with respect to defending against Released Claims pending settlement approval).

Additionally, the allegedly non-collusive conduct is only pleaded with respect to exceedingly slim slivers of the FX transactions at issue and of the proposed injured class.  The limited and episodic unilateral action plainly does not support either the purported scope or class action nature of the PSAC, which necessarily relies for such purposes on the common allegations of conspiracy and concerted action.  (*See* PSAC ¶¶ 57-58.)[16]  Moreover, no claim is actually pleaded that is purportedly based solely on "last look" or other non-collusive conduct.  In the PSAC, as they did in the Amended Complaint, the *Allen* Plaintiffs continue to plead collusive conduct as an element of every one of their claims.  (*See* PSAC ¶¶ 286-353.)[17]

---

[15]  Count VI of the PSAC is not asserted against Bank of America, BNP Paribas, Goldman Sachs, or HSBC.

[16]  The plea agreements and consent orders relied upon by the *Allen* Plaintiffs were focused primarily on purportedly collusive conduct: "participation in a conspiracy to fix, stabilize, maintain, increase the price of, and rig bids and offers for currency."  (PSAC ¶ 198.)  The same plea agreements and consent orders relied on in the PSAC as evidence of non-collusive conduct are also relied on in the Consolidated Complaint.  (*See, e.g.*, CAC2 ¶ 244.)

[17]  Fundamentally, whether characterized as collusive or non-collusive, the conduct that allegedly injured the *Allen* Plaintiffs and underpins their ERISA claims (even as-amended) is the same:  "overcharging" enabled by artificial FX rates resulting from manipulation.  (*See* PSAC ¶ 8 ("[Defendants'] manipulation [of the FX markets] affected the pricing of hundreds of billions of dollars of FX Transactions.").)

The fact that the *Allen* Plaintiffs' proposed "last look" allegations are unrelated to the remainder of the PSAC provides an independent basis for denying leave to amend.  *Cf. Djourabchi v. Self*, 240 F.R.D. 5, 13 (D.D.C. 2006) ("the court may deny leave to amend where . . . the issues raised by the amendment are remote from the other issues of the case.") (citation omitted); *Stiller v. Colangelo*, 221 F.R.D. 316, 317 (D. Conn. 2004) (denying plaintiff's motion to amend his complaint and stating that if "the court finds that the issues raised by the amendment are remote from the other issues in the case and might confuse or mislead the jury, leave to amend may well be denied"); *Am. Soc'y for the Prevention of Cruelty to Animals v. Ringling Bros.*, 244 F.R.D. 49, 51 (D.D.C. 2007) (where the court denied defendants' motion to amend their answer and stated that "where the issues raised by the amendment are remote to the issues of the case" leave to amend may be denied).

## II.   For Prudential Reasons, The Court May Defer Final Consideration Of The Preclusive Effect Of The Settlements

As set forth above, Settling Defendants believe that the prosecution of the *Allen* Plaintiffs' complaint, with or without the proposed amendment, is barred by the Court's Order.  But a final resolution of that issue at this stage is not necessary to dispose of their motion to amend as to the Settling Defendants.  The coverage of, at least, the core of the *Allen* Plaintiffs' allegations and claims by the releases and Order is sufficiently clear that a number of prudential reasons support (a) staying the *Allen* action against the Settling Defendants, (b) denying the *Allen* plaintiffs' motion to amend without prejudice now, and (c) deferring the final determination until at least the fairness hearing, where the Court will have the benefit of a full record and briefing.

A definitive determination as to the preclusive effect of the settlements on the *Allen* Action would be premature and disruptive—a conclusion that is supported not only by the Court's injunction, but also by abundant case law.  The *Allen* Plaintiffs should not be permitted to disturb the settlement process, which was the result of intensive, arm's-length negotiations and included the assistance of a nationally-renowned mediator.[18]  There is no doubt that the settlements in the Consolidated Action—which total over $2 billion—provide potential class members with significant value, including by offering certain recovery, while avoiding the risks, and enormous costs, of what would unquestionably be extensive, protracted, and risky litigation.  *See In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 477 (S.D.N.Y. 1998) (noting that "[t]here can be no doubt that this class action would be enormously expensive to continue, extraordinarily complex to try, and ultimately uncertain of result").

The fairness hearing is generally the appropriate forum finally to "decide what [the

---

[18] *See* Settling Defs.' Resp. to *Allen* Pls.' Resp. to Prelim. Approval of Settlement Agreements, Consol. Action, ECF No. 511; *see also* Decl. of Kenneth R. Feinberg in Support of Class Pls.' Mot. for Prelim. Approval of Settlement Agreements with Bank of Am., Barclays, BNP Paribas, Citigroup, Goldman Sachs, HSBC, JPMorgan, RBS, & UBS, ECF No. 482.

settlement's] extent or coverage shall be . . . ."  7AA Charles Alan Wright & Arthur D. Miller, *Federal Practice & Procedure* § 1789 (3d ed. 1998); *see also  Robertson v. Nat'l Basketball Ass'n*, 622 F.2d 34, 35 (2d Cir. 1980) (approving District Court judgment that, following approval of the class settlement at the final fairness hearing, enjoined prosecution of an antitrust action in California because it hinged on the same factual predicate as that of a class action being litigated in the Southern District).  In the meantime, potential class members and the overall settlement process will be sufficiently protected through notification that possible ERISA claims in this follow-on action, which hinge on the same factual predicate as the main case, may be barred by settlement.  *See TBK Partners, Ltd. v. W. Union Corp.*, 675 F.2d 456, 460 (2d Cir. 1982) (noting that a judgment can bar other claims that would have been based on the same factual predicate as the underlying claims in the settled class action "[a]s long as the overall settlement is found to be fair *and class members were given sufficient notice*") (emphasis added). A decision on the preclusive effect of a class settlement is appropriate where "there is a realistic identity of issues between the settled class action and the subsequent suit, and where the relationship between the suits *is at the time of the class action foreseeably obvious to notified class members* . . . ."  *Id*. at 461 (emphasis added).  To force Settling Defendants to divert energy and resources away from the settlement process would not only deprive them of a bargained-for benefit of their settlement agreement and frustrate the purpose of the Court's Order, but would undermine this Circuit's "strong judicial policy in favor of settlements, particularly in the class action context."  *In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998); *see also Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 117 (2d Cir. 2005) ("The compromise of complex litigation is encouraged by the courts and favored by public policy.") (citation omitted); *TBK Partners*, 675 F.2d at 461 (recognizing a "paramount policy of encouraging settlements").

## **<u>CONCLUSION</u>**

For the foregoing reasons, the *Allen* Plaintiffs' motion to further amend their already once amended complaint should be denied as to the Settling Defendants—if not denied in its entirety.

Dated:  January 29, 2016               Respectfully submitted,

SHEARMAN & STERLING LLP

By: /s/ Adam S. Hakki
Adam S. Hakki
Richard F. Schwed
Jeffrey J. Resetarits
599 Lexington Avenue
New York, New York 10022
Telephone: (212) 848-4000
ahakki@shearman.com
rschwed@shearman.com

*Attorneys for Defendants Bank of America*
*Corporation, Bank of America, N.A.,*
*Merrill Lynch, Pierce, Fenner & Smith*
*Inc.*


ALLEN & OVERY LLP
By:  /s/ David C. Esseks
David C. Esseks
Brian de Haan
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 610-6300
david.esseks@allenovery.com
brian.deHaan@allenovery.com

John Terzaken
110 1 New York Avenue
Washington, D.C. 20005
Telephone: (202) 683-3800
john.terzaken@allenovery.com

*Attorneys for Defendants BNP Paribas*
*Group, BNP Paribas North America Inc.,*
*BNP Paribas Securities Corp., and BNP*
*Prime Brokerage, Inc.*


SULLIVAN & CROMWELL LLP

By:  /s/ Yvonne S. Quinn
Yvonne S. Quinn
David H. Braff
Jeffrey T. Scott
Matthew A. Schwartz
125 Broad Street
New York, New York 10004
Telephone: (212) 558-4000
quinny@sullcrom.com
braffd@sullcrom.com
scottj@sullcrom.com
schwartzmatthew@sullcrom.com

*Attorneys for Defendants Barclays Bank*
*PLC and Barclays Capital Inc.*


COVINGTON & BURLING LLP

By:  /s/ Andrew A. Ruffino
Andrew A. Ruffino
The New York Times Building
620 Eighth Avenue
New York, New York 10018
Telephone: (212) 841-1000
aruffino@cov.com

Alan M. Wiseman
Thomas A. Isaacson
Andrew D. Lazerow
One CityCenter
850 Tenth Street N.W.
Washington, D.C. 20014
Telephone: (202) 662-6000
awiseman@cov.com
tisaacson@cov.com
alazerow@cov.com

*Attorneys for Defendants Citigroup Inc.,*
*Citibank, N.A., Citicorp, and Citigroup*
*Global Markets Inc.*

CLEARY GOTTLIEB STEEN &
HAMILTON LLP

By:  /s/ Thomas J. Moloney
Thomas J. Moloney
Victor L. Hou
Elizabeth Vicens
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999
tmoloney@cgsh.com
vhou@cgsh.com
evicens@cgsh.com

George S. Cary
Leah Brannon
2000 Pennsylvania Avenue, N.W.
Washington, DC 20006
Telephone: (202) 974-1500
Facsimile: (202) 974-1999
gcary@cgsh.com
lbrannon@cgsh.com

*Attorneys for Defendants The Goldman
Sachs Group, Inc. and Goldman, Sachs &
Co.*

LOCKE LORD LLP

By:  /s/ Edwin R. DeYoung
Edwin R. DeYoung
Gregory T. Casamento
LOCKE LORD LLP
3 World Financial Center
New York, NY 10281
Telephone: (212) 812-8325
Fax: (212) 812-8385
edeyoung@lockelord.com
gcasamento@lockelord.com

Roger B. Cowie
2200 Ross Avenue, Suite 2200
Dallas, Texas  75201-6776
Tel.: (214) 740-8000
Fax: (214) 740-8800
rcowie@lockelord.com

J. Matthew Goodin
Julie C. Webb
111 South Wacker Drive
Chicago, Illinois 60606
Tel.: (312) 443-0700
Fax: (312) 896-6472
jmgoodin@lockelord.com
jwebb@lockelord.com

*Attorneys for Defendants HSBC Holdings
PLC, HSBC Bank PLC, HSBC North
America Holdings Inc., HSBC Bank USA,
N.A., and HSBC Securities (USA) Inc.*

SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP

By: /s/ Peter E. Greene
Peter E. Greene
Boris Bershteyn
Peter S. Julian
Four Times Square
New York, NY 10036
Telephone: (212) 735-3000
Facsimile: (212) 735-2000
peter.greene@skadden.com
boris.bershteyn@skadden.com
peter.julian@skadden.com

*Attorneys for Defendants JPMorgan
Chase & Co. and JPMorgan Chase Bank,
N.A.*


DAVIS POLK & WARDWELL LLP

By: /s/ Joel M. Cohen
Joel M. Cohen
Jennifer Kan
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 450-4800
joel.cohen@davispolk.com
jennifer.kan@davispolk.com

*Attorneys for Defendants The Royal Bank
of Scotland Group PLC, The Royal Bank
of Scotland PLC, and RBS Securities Inc.*

GIBSON, DUNN & CRUTCHER LLP

By: /s/ Joel S. Sanders
Joel S. Sanders
555 Mission Street
San Francisco, California 94105
Telephone: (415) 393-6268
Facsimile (415) 374-8439
jsanders@gibsondunn.com

Peter Sullivan
200 Park Avenue
New York, New York 10166
Telephone: (212) 351-4000
Facsimile: (212) 351-6370
psullivan@gibsondunn.com

Melanie L. Katsur
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 955-8500
Facsimile: (202) 467-0539
mkatsur@gibsondunn.com

*Attorneys for Defendants UBS AG, UBS
Group AG, and UBS Securities LLC*

**EXHIBIT A:  Illustrative Allegations of Collusion in Amended Complaint**

| ¶ 13 | "Defendants acted . . . in concert to manipulate the FX markets for their own profit." |
|---|---|
| ¶ 14 | "Defendants also manipulated the interbank FX fixing rates in the FX Spot Market . . . and conspired with other Defendant banks to fix the bid/ask spreads paid for various currency pairs.  Defendants exchanged confidential customer order information and trading positions with each other . . . and agreed on strategies for trading in and around the setting of the FX Spot Market rates." |
| ¶ 42 | "Each of the Defendants named herein acted as the agent or joint-venturer on behalf of the other Defendants with respect to the acts, violations, and common course of conduct alleged herein." |
| ¶ 43 | "Various other persons, firms, and corporations that are unknown and not named as Defendants participated as co-conspirators with Defendants and performed acts or made statements in furtherance of the conspiracy." |
| ¶¶ 75-79 | "[T]raders at different banks worked together, sharing otherwise highly sensitive information, including information about their respective customers' order flows and how they planned to cover their customers' orders, so that they all could execute more profitable trading strategies at the expense of those customers.  In addition, they often improperly worked together to front run 'as a pack' and agreed 'to a sequence for placing their own trades to their advantage.'" |
| ¶¶ 80-98 | Alleging details surrounding Defendants' methods for colluding to manipulate FX rates from at least January 1, 2003, including:<br><br>"Defendants' top-level traders used various means, including chat rooms, instant messages, and email, to facilitate their collusion."<br><br>"Defendants' FX traders participated in multiple chat rooms, allowing them to simultaneously communicate with numerous other Defendants on a global basis, demonstrating the vast . . . reach of their anticompetitive conduct."<br><br>"The direct evidence of defendants' collusive manipulation of benchmark rates is overwhelming."<br><br>Excerpting various chat room transcripts purportedly demonstrating collusion, including that certain traders engaged in multiple, simultaneous individual chat rooms to facilitate their "collusion scheme." |
| ¶¶ 103-11 | Alleging that Defendants improperly shared market-sensitive information with each other in order to align strategies to manipulate benchmark rates. |
| ¶¶ 112-15 | Alleging that "Defendants used other collusive strategies to amplify the benefits of sharing information," including "banging the close," "painting the |

16

| | |
|---|---|
| | screen," and "reaching deep into the book." |
| ¶¶ 129-34 | Alleging that "at least as early as January 1, 2003, Defendants began conspiring to fix the bid-ask spreads for various currency pairs. In thousands of communications, traders from more than 30 banks coordinated and exchanged information about spreads, with the explicit understanding that they would artificially adjust spreads based on information from other traders in the group. . . . And because spreads were wider than they would have been absent collusion, Defendants' customers, including Plaintiffs, paid supra-competitive prices for their FX transactions," and excerpting various chat room transcripts purportedly demonstrating collusion regarding spreads. |
| ¶¶ 149-50 | "In announcing the fines and criminal plea agreements, U.S. Attorney General Loretta Lynch declared that the five Defendant banks had 'for years participated in a brazen display of collusion and foreign exchange rate market manipulation,' noting that 'these unprecedented figures appropriately reflect the conspiracy's breathtaking flagrancy, its systemic reach and its significant impact.'"<br><br>"The Defendants also admitted to 'other relevant conduct' that was '[i]n addition to…participation in a conspiracy to fix, stabilize, maintain, increase the price of, and rig bids and offers for' currency in the spot market." |

**EXHIBIT B:  Illustrative Allegations of Collusion in the PSAC**

| ¶ 9-19 | Alleging that "defendants worked to together to manipulate the wholesale and retail FX markets. A particularly egregious example of Defendants' collusive behavior was manipulation of interbank wholesale fixing rates, which were the basis for many FX Transactions. . . ." and citing that: <br><br> "Defendants exchanged confidential customer order information and trading positions with each other, . . . to agree on strategies for trading in and around the setting of fixing rates." <br><br> "[T]raders routinely coordinated their trading strategies immediately before and during the fix to increase the effect of their trades on the fix rate and provided each other with confidential client information as part of that coordination." <br><br> "Defendants also communicated with each other about their net customer orders so that they would know whether the fixing rates were likely to move higher or lower. Then they traded in ways that amplified that movement." <br><br> "Defendants sold currency before the fix to help other Defendants build ammo to influence the fix rate." <br><br> "Defendants 'painted the screen' by placing phony orders with one another . . . ." |
|---|---|
| ¶ 20 | "Defendants also agreed to coordinate the bid/ask spreads for various currency pairs. . . .  By agreeing to coordinate bid/ask spreads, Defendants effectively fixed prices for specific currency pairs." |
| ¶ 57 | "Each of the Defendants named herein acted as the agent or joint-venturer on behalf of the other Defendants with respect to the acts, violations, and common course of conduct alleged herein." |
| ¶ 58 | "Various other persons, firms, and corporations that are unknown and not named as Defendants participated as co-conspirators with Defendants and acted or made statements in furtherance of the conspiracy." |
| ¶¶ 100-04 | "[T]raders at different banks often shared otherwise highly sensitive information, including information about their respective customers' order flows and how they planned to cover their customers' orders, so that they all could execute more profitable trading strategies at the expense of those customers.  In addition, they often colluded to front run 'as a pack' and agreed 'to a sequence for placing their own trades to their advantage.'" |
| ¶¶ 105-23 | Alleging details surrounding Defendants' methods for colluding to manipulate FX rates from at least January 1, 2003, including: <br><br> "Defendants' top-level traders used various means, including chat rooms, instant messages, and email, to facilitate their collusion." |

|  | "Defendants' FX traders participated in multiple chat rooms, which allowed them to simultaneously communicate with numerous other Defendants around the world."

"The direct evidence of defendants' collusive manipulation of benchmark rates is overwhelming."

Excerpting various chat room transcripts purportedly demonstrating collusion, including that certain traders engaged in multiple, simultaneous individual chat rooms to facilitate their "collusion scheme." |
|---|---|
| ¶¶ 128-36 | Alleging that Defendants improperly shared market-sensitive information with each other in order to align strategies to manipulate benchmark rates. |
| ¶¶ 137-40 | Alleging that "Defendants used other collusive strategies to amplify the benefits of sharing information," including "banging the close," "painting the screen," and "reaching deep into the book." |
| ¶¶ 160-65 | Alleging that "at least as early as January 1, 2003, Defendants began conspiring to collusively fix the bid/ask spreads for various currency pairs. In thousands of communications, traders from more than 30 banks coordinated and exchanged information about spreads, with the explicit understanding that they would artificially adjust spreads based on information from other traders in the group. . . . And because spreads were wider than they would have been absent collusion, Defendants' customers, including Plaintiffs, paid supra-competitive prices for their FX transactions," and excerpting various chat room transcripts purportedly demonstrating collusion regarding spreads. |
| ¶¶ 197-98 | Alleging that "[i]n announcing the fines and criminal plea agreements, U.S. Attorney General Loretta Lynch declared that the five Defendant banks had 'for years participated in a brazen display of collusion and foreign exchange rate market manipulation,' noting that 'these unprecedented figures appropriately reflect the conspiracy's breathtaking flagrancy, its systemic reach and its significant impact'" and that "Defendants also each admitted to 'other relevant conduct' that was '[i]n addition to . . . participation in a conspiracy to fix, stabilize, maintain, increase the price of, and rig bids and offers for' currency in the spot market." |