UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

DORIS SUE ALLEN, et al.,                          :

                            Plaintiffs,   :

                                                :

                -against-                           :

                                                  :

BANK OF AMERICA CORPORATION, et al.,   :

                              Defendants.   :

                                                  :

-------------------------------------------------------------X

| USDC SDNY |
| DOCUMENT |
| ELECTRONICALLY FILED |
| DOC #:_____ |
| DATE FILED: _08/23/2016_ |

15 Civ. 4285 (LGS)

**OPINION AND ORDER**

LORNA G. SCHOFIELD, District Judge:

      Defendants Credit Suisse Securities (USA) LLC, Deutsche Bank AG, Morgan Stanley, Morgan Stanley & Co. LLC and Morgan Stanley Capital Services LLC (collectively, the "Moving Defendants") move to dismiss the Second Amended Class Action Complaint's (the "Complaint") claims against them under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) for lack of subject matter jurisdiction and for failure to state a claim. For the following reasons, the motion is denied as to subject matter jurisdiction but granted on the pleadings.

## I.    **BACKGROUND**

      Plaintiffs sue twelve banks and their affiliates under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132(a)(2) and (a)(3), for losses caused by Defendants' breach of fiduciary duties and participation in prohibited transactions arising from their alleged manipulation of the foreign currency ("FX") markets for over a decade. Plaintiffs purport to bring this action "on behalf of the named Plaintiffs' ERISA employee benefit Plans [("the Plans")] which cover more than 400,000 plan participants and beneficiaries, and as a class action on behalf of participants, beneficiaries, and named fiduciaries of all other similarly situated Plans." The named plaintiffs are beneficiaries, participants or trustees of defined benefit, defined contribution or death benefit plans.

According to the Complaint, Defendants' "manipulation affected the pricing of hundreds of billions of dollars of FX Transactions," including those involving the Plans.  Defendants manipulated the wholesale and retail FX markets, and colluded to manipulate interbank wholesale fixing rates such as the WM/Reuters Closing Spot Rates.  Defendants also exchanged confidential customer order information and trading positions with each other, and routinely coordinated trading strategies before and during the "fixes."  The Complaint alleges at length several ways in which Defendants coordinated to effectuate their manipulation.

The Complaint also alleges unilateral misconduct by Defendants in their FX transactions. For example, Defendant banks acting alone allegedly moved rates by trading for their own individual accounts ahead of large customer orders.  Traders and FX sales employees within Defendant banks also allegedly added "markups" to spreads quoted to customers when the bank knew or believed that a given customer was buying or selling.  Finally, at least one Defendant, Barclays, is alleged to have incorporated a "hold" period into its trading platform through which it rejected customer orders in cases where the market moved in the customer's favor during the hold period, but completed the order if the market moved in the bank's favor.

Plaintiffs filed suit on June 3, 2015.  The Complaint, filed on April 6, 2016, asserts the following five claims under ERISA against the Moving Defendants: (1) breach of duties of prudence and loyalty, in violation of 29 U.S.C. § 1104; (2) engaging in self-interested prohibited transactions with plan assets, in violation of 29 U.S.C. § 1106(b)(1); (3) acting on behalf of a party with interests adverse to the Plans, in violation of 29 U.S.C. § 1106(b)(2); (4) causing the Plans to engage in party-in-interest prohibited transactions, in violation of 29 U.S.C.

§ 1106(a)(1) and, alternatively, (5) knowingly participating in prohibited transactions as a "party in interest," in violation of 29 U.S.C. § 1106(a)(1).[1]

Many of the allegations in the Complaint track those in a separate action captioned *In re Foreign Exchange Benchmark Rates Antitrust Litigation* ("*FOREX*").  3d Am. Compl., *FOREX*, No. 13 Civ. 7789 (S.D.N.Y. June 3, 2016), ECF No. 619.  The *FOREX* plaintiffs assert substantially the same joint manipulation claims under the federal antitrust laws.  More than twenty actions were consolidated in *FOREX*, but this case was not because of the unique ERISA theory of liability.

## II.   **STANDARD**

"A district court properly dismisses an action under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction if the court lacks the statutory or constitutional power to adjudicate it, such as when . . . the plaintiff lacks constitutional standing to bring the action." *Cortland St. Recovery Corp. v. Hellas Telecomms., S.A.R.L.*, 790 F.3d 411, 416–17 (2d Cir. 2015) (internal quotation marks and citation omitted).  "The plaintiff bears the burden of alleging facts that affirmatively and plausibly suggest that it has standing to sue.  In assessing the plaintiff's assertion of standing, we accept as true all material allegations of the complaint and construe the complaint in favor of the complaining party." *Id.* at 417 (internal quotation marks, citations and alterations omitted).

In deciding motions to dismiss under Rule 12(b)(6), "all factual allegations in the complaint are accepted as true and all inferences are drawn in the plaintiff's favor." *Littlejohn v. City of New York*, 795 F.3d 297, 306 (2d Cir. 2015).  "To survive a motion to dismiss, a

---

[1]   On July 15, 2016, Plaintiffs filed a separate Third Amended Complaint ("TAC") asserting claims against the non-Moving Defendants.  This opinion does not address the TAC's claims against those entities.

complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

III.   **DISCUSSION**

The Court has subject matter jurisdiction, but the Complaint fails to state colorable claims under ERISA. The arguments concerning subject matter jurisdiction are addressed first. *See, e.g.*, *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (assuming subject matter jurisdiction to reach the merits "carries the courts beyond the authorized judicial action and offends fundamental principles of separation of powers"); *Carver v. Nassau Cty. Interim Fin. Auth.*, 730 F.3d 150, 156 (2d Cir. 2013) ("Normally, in cases involving the issue of Article III subject matter jurisdiction, this issue would have to be addressed first.").

**A.  Subject Matter Jurisdiction**

The Moving Defendants argue that the Court lacks subject matter jurisdiction over some or all of the claims against them because (1) all named Plaintiffs lack Article III standing, (2) the named Plaintiffs who are participants in defined benefit plans lack Article III standing and (3) the named Plaintiffs lack Article III standing to represent other plans. As explained below, these arguments are rejected.

In *Lujan*, the Supreme Court held:

> [T]he irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party before the court.  Third, it must be

likely, as opposed to merely speculative, that the injury will be redressed by a
favorable decision.

*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (internal quotation marks, citations and

alterations omitted).

The Complaint pleads Article III standing insofar as each named Plaintiff -- except Doris

Sue Allen and Donna S. Lucas -- is alleged to have suffered personal losses caused by (and

traceable to) specific transactions that her respective Plan executed through a Defendant at a

manipulated price as follows:

Plaintiffs Dana Kellen and Hedy Anselman participated in the Health Corporation of

America ("HCA") 401(k) Plan, a defined contribution plan.  Kellen and Anselman invested their

account assets in vehicles holding international investments, such as the Plan's "International

Stock Fund" and the "Pre-Mix To-Go Fund."  The assets of the HCA plans were themselves

invested through the HCA Inc. Master Retirement Trust (the "HCA Trust").  The Complaint

alleges that "investment managers of the [HCA Trust] arranged for Defendant banks to conduct

FX Transactions that involved ERISA assets of the HCA 401(k) Plan and the HCA Retirement

Plan," and that when Defendants executed these FX transactions, they engaged in the alleged

unlawful practices and reaped profits at the expense of the HCA Trust, the HCA plans and

Plaintiffs Kellen and Anselman.

Plaintiff Timothy R. Garrett similarly participated in his employer's 401(k) plan, and

invested in investment vehicles with international holdings.  The investment managers of

Garrett's plan also arranged for Defendant banks to conduct FX transactions.  Garrett's

investments similarly suffered as a result of Defendants' alleged manipulation.

Three remaining named Plaintiffs are trustees suing on behalf of the International Ladies

Garment Workers Union Death Benefit Fund 2 (the "ILGWU Fund"), whose investment

managers arranged for Defendant banks to enter into FX transactions involving plan assets.  The Complaint does not allege that these individuals invested on their own behalf, but instead are presumed to sue on behalf of the ILGWU Fund in their roles as trustees for losses suffered by the fund in FX transactions the Defendants executed.  *See Nationwide Life Ins. Co. v. Haddock*, 460 F. App'x 26, 28 (2d Cir. 2012) (summary order) ("Plaintiffs are ERISA Plan trustees, *not* 'Plan participant[s] or beneficiar[ies].'  Thus, their allegations of injuries to plans resulting from Nationwide's alleged breaches of fiduciaries are in no sense indirect, and we have no difficulty concluding that plaintiffs have properly pleaded the required injury-in-fact.").

Plaintiffs Allen and Lucas are beneficiaries of defined benefit plans. The Complaint alleges that Allen is a beneficiary of the Caterpillar Inc. Retirement Income Plan, which is a defined benefit plan.  The assets of the Caterpillar Inc. Retirement Income Plan were invested through the Caterpillar Inc. Retirement Master Trust (the "Caterpillar Trust").  This trust arranged for Defendants to execute FX transactions involving Plan assets, and the Complaint alleges that through the manipulative conduct alleged Defendants profited at the expense of the Caterpillar Trust and Plan.  Lucas is a beneficiary of, and receives a regular pension payment through, the Bridgestone Americas Salaried Employees Retirement Plan, which is also a defined benefit plan whose assets were invested through the Bridgestone Americas, Inc. Master Pension Trust.  The Complaint alleges that during the class period the Bridgestone trust arranged with Defendant banks to conduct FX transactions with Plan assets, and that Defendants reaped profits at the Bridgestone Plan's expense.  The Complaint does not allege that either Allen or Lucas had personal investments that were affected by Defendants' alleged conduct.  As explained below, Allen and Lucas do not have constitutional standing to sue for their individual losses, but may sue in a derivative capacity.

The named Plaintiffs' injuries would be redressed by any decision of this Court holding that they were entitled to either damages or equitable relief as a result of Defendants' having violated the law.

The Moving Defendants challenge (1) whether any injury in fact, as pleaded, is traceable to the alleged misconduct, and (2) whether the Plaintiffs who allege injury based on participation in defined benefit plans plausibly plead injury in fact.  These arguments are addressed in turn.

*1. Injury In Fact and Traceability*

The Moving Defendants argue that Plaintiffs fail to allege any injury that is traceable to Defendants' challenged activities because "[a]lthough Plaintiffs identify certain FX trades made by the Plans, . . . they do not identify any specific transaction that was affected by Non-Settling Defendants' alleged conduct."  According to the Moving Defendants, "Plaintiffs' failure to allege any connection between the Plans' FX transactions and contemporaneous episodes of purported manipulation 'goes directly to constitutional standing and is fatal' to Plaintiffs' claim."

In the *FOREX* case described above, based on the same allegations of manipulation of the FX markets, this Court rejected a similar challenge to plaintiffs' Article III standing.  *FOREX*, 74 F Supp. 3d 581, 595 (S.D.N.Y. 2015).  In *FOREX*, the Court held that the complaint sufficiently alleged injury in fact because "any particular transaction that a particular Plaintiff entered into with a particular Defendant on a day that the Fix was manipulated to that Plaintiff's detriment would sufficiently demonstrate injury in fact as to that Plaintiff."  *Id*.

The Complaint in this action alleges the same decade-long conspiracy by Defendants to manipulate the FX markets, affecting the pricing of hundreds of billions of dollars of FX transactions.  The Complaint also identifies more than 500 individual FX transactions that

Defendants executed on behalf of the Plans.  To the extent the Moving Defendants argue that the Complaint is required to allege how the price was manipulated for each individual transaction, their argument "ultimately amounts to a demand for specifics that are not required, and that Plaintiffs could not be reasonably expected to know, at the pleading stage."  *Id.*  The Moving Defendants' traceability argument is therefore rejected.

### 2. Defined Benefits Plans

The Moving Defendants next argue that certain claims asserted by two of the named Plaintiffs -- Allen and Lucas -- must be dismissed because the Complaint does not plausibly plead that participants in defined benefit plans suffered concrete or individualized harms because any shortfall in benefits must be covered by the Plans' sponsors.  As explained below, this argument is rejected.  Although these Plaintiffs do not have Article III standing to sue in their individual capacities, they have constitutional standing to sue on behalf of their respective Plans.

In contrast to defined contribution plans, "[d]efined benefit plans promise participants a specified, periodic benefit at retirement.  Although the investment pool from which those benefits are drawn may be funded in various ways, the employer typically bears the risk associated with operating the plan and must cover any shortfall."  *Milgram v. Orthopedic Assocs. Defined Contribution Pension Plan*, 666 F.3d 68, 76 (2d Cir. 2011).  "Given the employer's obligation to make up any shortfall, no plan member has a claim to any particular asset that composes a part of the plan's general asset pool.  Instead, members have a right to a certain defined level of benefits, known as 'accrued benefits.'"  *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 440 (1999).

Allen and Lucas have not pleaded Article III standing to assert individual claims for personal losses arising out of losses to defined benefit plans.  The Complaint asserts that Allen

and Lucas suffered constitutional injury via their defined benefit plans because Defendants'
actions caused "the Plans and their participants [to] suffer[] hundreds of millions of dollars of
losses," and "these losses increased the risk of non-payment of future benefits to participants and
beneficiaries."  These allegations are general and conclusory.  There are no separate allegations
that either Allen or Lucas was affected by Defendants' alleged conduct, or that any particular
defined benefit plan was at increased risk of being unable, or was actually unable, to fulfill its
obligations to its beneficiaries.  *See generally Tavares v. UBS AG*, 612 F. App'x 27 (2d Cir.
2015) (summary order) ("An ERISA plan participant lacks standing to sue for ERISA violations
that cause injury to a plan but not individualized injury to the plan participant.").  The
Complaint's allegations that Allen and Lucas have suffered or will suffer injuries arising from
their defined benefit plans' losses are also speculative.  *See David v. Alphin*, 704 F.3d 327, 338
(4th Cir. 2013) ("[T]he risk that Appellants' pension benefits will at some point in the future be
adversely affected as a result of the present alleged ERISA violations is too speculative to give
rise to Article III standing."); *see generally Fletcher v. Convergex Grp.*, No. 13 Civ. 9150, 2016
WL 690889, at *3 (S.D.N.Y. Feb. 17, 2016) (no constitutional standing for participant in defined
benefit plan where "Defendants' overcharges increased the plan's deficiency by less than one
hundred-thousandth of one percent").

Plaintiffs clarify in their opposition brief that Allen and Lucas are asserting claims on
behalf of their defined benefit plans.  The Complaint alleges that their respective Plans invested
through trusts that arranged with Defendants to conduct FX transactions with Plan assets, and
that Defendants profited at their expense.  Pursuant to the Second Circuit's decision in *Head
Start*, Allen and Lucas have Article III standing to the extent they are asserting claims in a
derivative capacity.  *Long Island Head Start Child Dev. Servs., Inc. v. Econ. Opportunity*

*Comm'n of Nassau Cty., Inc*, 710 F.3d 57 (2d Cir. 2013).  In *Head Start*, the court held in

relevant part that a class of plan participants had both a cause of action under the statute and

constitutional standing to assert ERISA claims against plan administrators for failing to ensure

that the plan had sufficient assets to satisfy a prior judgment against the plan.  *Id.* at 61, 65–67.

   After analyzing ERISA §§ 502(a)(2) and 409, the *Head Start* court held that appellees

had a cause of action under the statute.  *Id.* at 65–67.  The court then addressed appellants'

separate argument that the plaintiffs/appellees lacked constitutional standing.  The court rejected

this argument as follows:

> We also reject the Administrators' argument that LIHS and the Class lack
> constitutional standing because they have not suffered an injury-in-fact.  As
> discussed, LIHS and the Class have asserted their claims in a derivative capacity,
> to recover for injuries to the Plan caused by the Administrators' breach of their
> fiduciary duties.  This is injury-in-fact sufficient for constitutional standing.

*Id.* at 67 n.5 (internal citation to *Lujan* omitted).

   The Moving Defendants argue that the *Head Start* court's cursory treatment of the Article

III issue did not resolve what the Second Circuit had previously termed the "difficult issues" of

representational standing.  *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco

Managed Care, L.L.C.*, 504 F.3d 229, 243 n.3 (2d Cir. 2007).  They also argue that *Head Start*'s

holding, if applied beyond that case's specific facts, would be "in direct contradiction with the

long line of authority established throughout the Circuits precluding representational standing by

plan participants based on alleged injury to their Plans alone."  These arguments are

unpersuasive as the Second Circuit's holding in *Head Start* is neither ambiguous nor dictum.

Absent clear authority from either the Supreme Court or a subsequent Second Circuit panel,

*Head Start*'s holding controls -- i.e., plan participants have constitutional standing to sue in a

derivative capacity for injuries to a Plan.  The Court therefore has subject matter jurisdiction over Allen's and Lucas's claims.

### 3. Standing to Represent Other Plans

Finally, the Moving Defendants argue that Plaintiffs lack Article III standing to represent other plans.  Specifically, the Moving Defendants claim that "the challenged conduct does not implicate 'the same set of concerns' across the multiple Plans that Plaintiffs seek to represent." Moving Defs.' Br. at 9 (quoting *Ret. Bd. of the Policemen's Annuity and Benefit Fund v. Bank of N.Y. Mellon*, 775 F.3d 154, 161–63 (2d Cir. 2014)).  As explained above, the Court has subject matter jurisdiction over the claims of the named Plaintiffs and therefore may reach the merits of those claims.  Because the claims of the named Plaintiffs are dismissed on the merits below, this Opinion does not reach whether the named Plaintiffs have Article III standing to represent other, unnamed ERISA plans.[2]

For the foregoing reasons, the Moving Defendants' motion to dismiss based on lack of subject matter jurisdiction is denied.

### B. Whether the Moving Defendants Are ERISA Fiduciaries or Parties in Interest

The Complaint does not adequately plead that the Moving Defendants were ERISA fiduciaries; it also does not state a colorable claim based on the theory that Moving Defendants were "parties in interest."  As a result, Counts I through V of the Complaint are dismissed.

### 1. ERISA Fiduciaries

Counts I through IV of the Complaint rely on Plaintiffs' contention that the Moving Defendants were ERISA "fiduciaries."  Count I alleges that "Defendants breached their ERISA fiduciary duties of prudence and loyalty, 29 U.S.C. § 1104(a)(1)(A), (B), when executing FX

---

[2]     For the same reason, the Opinion does not address the Moving Defendants' argument that the ERISA statute does not permit Plaintiffs to assert claims on behalf of other plans.

trades with Plan assets."  By its own terms, § 1104 governs only the conduct of persons or entities who are ERISA fiduciaries.  Similarly, the Complaint asserts as its second, third and fourth counts claims under § 1106, which lists "prohibited transactions" for ERISA fiduciaries. 29 U.S.C § 1106.  Because the Moving Defendants were never named as fiduciaries in any of the Plans and did not exercise fiduciary functions with respect to the challenged transactions, they are not subject to ERISA liability under either 29 U.S.C. § 1104 or § 1106.  Counts I through IV are therefore dismissed.

In ERISA actions asserting claims for breach of fiduciary duty, "the threshold question is not whether the actions of some person employed to provide services under a plan adversely affected a plan beneficiary's interest, but whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint."  *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000).

ERISA fiduciaries are either named under the Plan or exercise fiduciary functions.  *In re Citigroup ERISA Litig.*, 104 F. Supp. 3d 599, 613 (S.D.N.Y. 2015).  The Complaint does not allege that any Defendant was ever named in any Plan.  The parties' dispute concerns whether Defendants were fiduciaries because of the functions they performed.  Under ERISA,

> a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A); *see also Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262 (1993) ("ERISA . . . defines 'fiduciary' not in terms of formal trusteeship, but in *functional* terms of control and authority over the plan . . . .").

The Complaint's allegations concerning Defendants' fiduciary status are no more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," that are insufficient to survive motion to dismiss. *Iqbal*, 556 U.S. at 678. For example, the Complaint alleges that "Defendants had fiduciary duties under ERISA because they exercised discretionary authority or control over management of the ERISA Plans, or exercised authority or control with respect to the disposition of Plan assets," but does not allege any facts concerning such authority or control. Instead, the Complaint merely states that "many investment managers of ERISA Plan assets arranged with Defendant banks to conduct FX Transactions with ERISA assets."

The Complaint also alleges that "[s]ome banks, including some of the Defendant banks, were custodians of the Plans' assets," but does not identify which Defendants, nor describe how any Defendant served as a "custodian" for any Plan. Based on the allegations that other, non-Defendant, investment managers managed the Plans' investments, this vague allegation is insufficient to plead that Defendants exercised the requisite discretion and control over plan assets to be ERISA fiduciaries.

What the Complaint factually describes is that Defendants acted only as brokers or counterparties to FX transactions that the Plans entered into through their own (and separate) investment managers. For example, the Complaint alleges that the Plans' "[i]nvestment managers authorized FX Transactions with Plan assets when their investment strategies for a Plan required the exchange of one currency for another." After these FX transactions were authorized, the Plans' investment managers "arranged with Defendant banks" to conduct the FX transactions for the Plans. Although not specifically in the ERISA context, courts have consistently refused to impose fiduciary duties on arm's-length counterparties under the common

law.  *See, e.g.*, *Integra FX3X Fund, L.P. v. Deutsche Bank, AG*, No. 14 Civ. 8400, 2016 WL

1169514, at *4 (S.D.N.Y. Mar. 22, 2016) ("[O]rdinary, arms-length commercial arrangements

between sophisticated parties involve the 'relation of confidence or trust sufficient' to generate

fiduciary relationships only in 'extraordinary circumstances.'"); *B & M Linen Corp. v.*

*Kanneiesser, USA, Corp.*, 679 F. Supp. 2d 474, 479 (S.D.N.Y. 2010) (dismissing common law

breach of fiduciary duty claim where plaintiff "fail[ed] to explain . . . *why* the parties'

relationship is plausibly different from a typical arm's length commercial transaction between a

buyer and a seller").

      Plaintiffs argue that Defendants were "functional ERISA fiduciaries" because they acted

as "service providers" that exercised discretion to pay themselves out of plan assets and

leveraged plan assets for personal gain.  As explained below, the Complaint fails to allege that

Defendants had even "functional" discretionary control, authority or responsibility over the

Plans, and therefore were not ERISA fiduciaries, no matter how broadly construed.  *See Blatt v.*

*Marshall & Lassman*, 812 F.2d 810, 812 (2d Cir. 1987) ("Congress intended the term [fiduciary]

to be broadly construed.  '[T]he definition includes persons who have authority and responsibility

with respect to the matter in question, regardless of their formal title.'").

      In *F.H. Krear & Co. v. Nineteen Named Trustees*, the Second Circuit described how an

administrative service provider may become an ERISA fiduciary.  810 F.2d 1250 (2d Cir. 1987).

"When a person who has no relationship to an ERISA plan is negotiating a contract with that

plan, he has no authority over or responsibility to the plan and presumably is unable to exercise

any control over the trustees' decision whether or not, and on what terms, to enter into an

agreement with him."  *Id*. at 1259.  However, "after a person has entered into an agreement with

an ERISA-covered plan, the agreement may give it such control over factors that determine the

actual amount of its compensation that the person thereby becomes an ERISA fiduciary with respect to that compensation." *Id.*

The Complaint's allegations fall short of the level of control described in the cases that Plaintiffs cite for the proposition that "service providers" may be considered ERISA fiduciaries. In *F.H. Krear*, the Second Circuit found that Krear was an ERISA fiduciary when several funds entered into three-year contracts with "Krear to furnish . . . all administrative functions related to the collection of monies due" to the funds, and each contract provided for Krear to be able to "receive . . . a specified percentage of the collections it made on behalf of the Fund." *Id*. at 1254–55.

In *United Teamster Fund*, the court held that a third-party plan administrator, MagnaCare, was an ERISA fiduciary when it charged health benefit plans fees without disclosing them. *United Teamster Fund v. Local 522 Welfare Fund of N.Y. and N.J.*, 39 F. Supp. 3d 461, 469–71 (S.D.N.Y. 2014). Specifically, the administrator in *United Teamster Fund* was alleged to have "pocket[ed] the savings from renegotiated rates with providers," and thereby "unilaterally increased its own fees." *Id.* at 470. The parties' relationship in *United Teamster Fund* was governed by various service agreements wherein "MagnaCare had a duty to adjudicate claims with the care, skill, prudence and diligence that a competent professional administrator, consistent with industry standards, would exercise with regard to an employee benefit fund subject to ERISA." *Id.* at 467 (internal quotation marks omitted).

In contrast, the Complaint here does not allege either that Defendants served as plan administrators or had long-term contracts with any Plan. Rather, the Complaint alleges that Defendants held a far more limited role (of executing FX transactions for the Plans), and that Defendants influenced the fees or compensation they received on a transaction-by-transaction

basis.  *See* Compl. ¶ 258 (alleging that Defendants' manipulative conduct allowed them to manipulate "the rates at which they executed FX Transactions for ERISA Plans").

The Complaint also does not allege that the Plans ever granted Defendants any agreed-to control over their compensation.  Plaintiffs describe the following "typical fact pattern": "Defendant bank A enters into an FX transaction with an ERISA plan that is tied to a benchmark rate.  Defendant bank A enters into the transaction knowing full well that it is participating in an ongoing conspiracy with defendant banks B, C, and D to manipulate benchmark FX rates." Contrary to Plaintiffs' suggestion that such an arrangement would make bank A an ERISA fiduciary, this scenario describes a counterparty relationship between that bank and the plan to transact at a specified rate, and the plan has not granted the bank any control or authority over that rate.  *See generally United Teamster Fund*, 39 F. Supp. 3d at 470 ("[C]ontractors that receive contractually-established commission rates are not fiduciaries as to their compensation.").

Because the Complaint does not allege any indicia of control over Plan assets or an ongoing contractual relationship between any Plan and any Defendant in which the Defendant bank unilaterally decided when to enter into FX transactions and at what prices, the Complaint does not adequately plead Defendants' authority over Plan assets.  *See Sirna v. Prudential Secs., Inc.*, 964 F. Supp. 147, 150 (S.D.N.Y. 1997) (analyzing *F.H. Krear* and noting that "[t]he touchstone [for administrative service provider liability] was a transfer of control over the plan or its assets from the plan to the provider which would enable the provider to manipulate the plan or its assets to its own benefit").

16

### 2. Defendants' Liability as Parties in Interest

Count V of the Complaint is based on the Defendant banks' alleged status as "parties in interest," and is pleaded in the alternative to Counts I through IV "to the extent any Defendant is found not to be an ERISA fiduciary with respect to any of the conduct complained of above." Count V asserts claims for relief under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), for violations of ERISA § 406(a)(1), 29 U.S.C. § 1106(a)(1)(A) and (D) (both provisions hereafter referenced in text with their ERISA section numbers), based on Defendants' having "knowingly participated as a party in interest in prohibited transactions."

Section 406(a) governs "transactions between plan[s] and part[ies] in interest" and provides:

> A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, *if he knows or should know* that such transaction constitutes a direct or indirect . . . (A) sale or exchange, or leasing, of any property between the plan and a party in interest; . . . [or] (D) transfer to, or use by or *for the benefit of a party in interest*, of any assets of the plan.

29 U.S.C. § 1106(a)(1)(A), (D) (emphases added).  The statute therefore requires: (1) a transaction between a fiduciary and a party in interest and (2) a fiduciary's actual or constructive knowledge of the prohibited transaction.

Section 502(a)(3) provides that

> [a] civil action may be brought . . . by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provision of this subchapter or the terms of the plan.

29 U.S.C. § 1132(a)(3).

The Supreme Court has held that equitable claims based on § 406(a) violations may be brought against non-fiduciaries under ERISA § 502(a)(3).  *Harris Tr. and Sav. Bank v. Salomon*

*Smith Barney Inc.*, 530 U.S. 238, 245-51 (2000) (holding that a civil action may be brought

against "an 'other person,' who 'knowingly participates' in a fiduciary's violation" of § 406(a)).

In *Harris*, the Supreme Court explained that a plaintiff must prove all of the elements of a § 406

claim in order to prevail, including that the plan fiduciary had "actual or constructive knowledge

of the facts" that give rise to the § 406(a) violation:

> [T]he transferee [of ill-gotten trust assets, i.e., the non-fiduciary and here allegedly
> the Defendants] must be demonstrated to have had actual or constructive
> knowledge of the circumstances that rendered the transaction unlawful.  Those
> circumstances, in turn, involve a showing that the *plan fiduciary*, with actual or
> constructive knowledge of the facts satisfying the elements of a § 406(a)
> transaction, caused the plan to engage in the transaction.

*Id*. at 251; *accord Laborers' Pension Fund v. Arnold*, No. 00 C 4113, 2001 WL 197634, at *8

(N.D. Ill. Feb. 27, 2001) ("To state a claim under § 406(a) . . . , Plaintiffs must allege not only

that the [non-fiduciary] defendants knew that they received excessive compensation, but also that

the plan fiduciaries knew or should have known that the payment tendered to Defendants was

unreasonable.").

Count V fails to state a claim and is dismissed because the Complaint does not allege

how any non-Defendant Plan fiduciary caused its plan to engage in a transaction with actual or

constructive knowledge that it would violate § 406 during the class period.  To the contrary, the

Complaint alleges that no such fiduciary would have been able to know of the facts underlying a

§ 406 violation because

> virtually none of the facts that Plaintiffs needed to draft a complaint was known
> until the Bloomberg article was published on June 11, 2013, and much of the
> conduct was unknown until Defendants and regulators acknowledged the
> investigations that eventually led to billions of dollars in fines.  And no amount of
> reasonable diligence would have allowed Plaintiffs to learn those facts sooner.

Compl. ¶ 275.  If, as the Complaint alleges, Plans overcompensated Defendants -- and

therefore transferred Plan assets "for the benefit of a party in interest," 29 U.S.C.

§ 1106(a)(1)(D) -- because "[t]he terms of [the] FX Transactions were less favorable to

the Plans than terms that would have generally been available in comparable arm's-length

FX Transactions between unrelated parties," there is no indication that any non-

Defendant Plan fiduciary could have known this.  The same facts that the Complaint

alleges were unavailable to Plaintiffs before 2013 were equally unavailable to any non-

Defendant plan fiduciary during the relevant period.

Instead of actual knowledge by a non-Defendant Plan fiduciary, Plaintiffs argue that

"each *fiduciary bank* and each Defendant had constructive knowledge that the FX Rate Rigging

Schemes involved ERISA assets."  This argument again relies on Plaintiffs' contention that

Defendants were Plan fiduciaries.  As held above, the Complaint does not adequately plead that

any Defendant bank was an ERISA fiduciary for any Plan.

The failure to allege a Plan fiduciary with actual or constructive knowledge of a § 406

violation is fatal to Plaintiffs' claim.  *See Harris*, 530 U.S. at 251 (liability of a transferee

dependent on a "showing that the *plan fiduciary*, with actual or constructive knowledge of the

facts satisfying the elements of a § 406(a) transaction, caused the plan to engage in the

transaction").

Because the Complaint fails to plead a colorable violation of ERISA § 406 by any Plan

fiduciary, the claims against the Moving Defendants as parties in interest are dismissed.[3]

---

[3]       Count V is dismissed for the reasons stated above, and the Court does not reach the
Moving Defendants' alternative arguments that the party-in-interest claims should be dismissed
because certain "foreign exchange transactions, between a bank or broker-dealer . . .  and a plan"
are exempted from the provision governing prohibited transactions, 29 U.S.C. § 1108(b)(18), or
because Plaintiffs impermissibly seek money damages where ERISA § 502(a)(3), 29 U.S.C.
1132(a)(3)(B), limits recovery in these cases to "appropriate equitable relief."  As each of the
claims against the Moving Defendants are dismissed, the Opinion also does not reach whether
Plaintiffs' pre-June 3, 2009, claims are untimely under ERISA's limitations period.

**IV.**   **CONCLUSION**

For the foregoing reasons, the Moving Defendants' Rule 12(b)(6) motion is GRANTED

in its entirety and the Complaint's claims against those entities are dismissed.  The Clerk of

Court is directed to close the motion at Dkt. No. 196.

Dated:  August 23, 2016
          New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE